# Joseph C. Crawford, Surviving Partner of Late Firm of William H. Crawford & Son, Plff. in Err., *v.* Susquehanna Mutual Fire Insurance Company.

A by-law of a mutual insurance company (which provides that notes subject to the payment of annual interest, and deposit notes upon which the interest has been paid in advance, shall not be assessed until all other notes held by the company liable to assessment shall have first paid in assessments an amount equal to the interest paid and to be paid within six months next succeeding the date of such assessment) construed to mean, not that all insured in the company are not assessable in the first instance, but that the assessments shall not be collected upon the interest-bearing notes until the other assessments collectible have been paid in equal to the interest mentioned.

(Argued January 30, 1888.   Decided March 5, 1888.)

January Term, 1886, No. 429, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas of Montgomery County to review a judgment for the plaintiff, a mutual insurance company, in an action to recover an assessment for losses while defendant was a member of the plaintiff company.   Affirmed.

The facts of the case are fully set out in the charge of the court below. .

The plaintiff having shown by its secretary how it arrived at the basis of its assessments, the defendant offered to show by the said witness and from the books of the company plaintiff, the aggregate amount of premium notes in force at the time of the loss for which the assessment was made, in order to show that the method adopted by the company was improper, and that defendant was assessed for more than his due proportion of loss.

Objected to.   Objection sustained.

By the court: "The defendant will be allowed to show that the mode of assessment adopted was contrary to law, by the introduction of testimony from the books, or otherwise, showing

Cited in Susquehanna Mut. F. Ins. Co. v. Leavy, 136 Pa. 499, 518, 20 Atl. 502, 505; New Hanover Mut. F. Ins. Co. v. Scholl, 12 Montg. Co. L. Rep. 78, 95.

NOTE.—The same form of assessment was approved in Susquehanna Mut. F. Ins. Co. v. Leavy, 136 Pa. 499, 20 Atl. 502, 505.

that the assessments were not in proportion to the liability of the insurer." [8]

Counsel for defendant requested the court to charge, *inter alia,* as follows:

"1. That the by-laws of the company plaintiff having provided a method of assessment which was not followed in this case, the verdict should be for the defendant."

*Ans.* Refused. [5]

"4. That the basis of assessment in this case was illegal."

*Ans.* Refused. [6]

"5. That unless the defendant was assessed according to law, there can be no recovery in this case, even although by the assessment made the defendant would be obliged to pay no more than was probably owing."

*Ans.* If the assessment was made so as to affect the proportionate liability of the defendant and contrary to his rights when he became a member, it was illegal; but I can find no such evidence. [7]

The court, BOYER, P. J., charged the jury as follows:

October 24, 1876, William H. Crawford & Son made application for membership and a policy of insurance in the Susquehanna Mutual Fire Insurance Company. A policy was issued and what is termed a premium note given in pursuance of that application, by which the store property of Crawford & Son was insured in the company for the sum of $2,500, at a rate of premium of 1 per cent. In the latter part of 1877 the insured became anxious to get out of the company, and certain negotiations took place to which I will call your attention hereafter.

When Mr. Crawford, the defendant, became a member of this insurance company he became liable, as other members, to assessments for losses sustained. This company was conducted upon the mutual plan, and each member of the company became liable to pay his just proportion of the losses incurred by the company, according to an equitable and impartial adjustment. He could not free himself from this liability during the continuance of his policy, which ran for five years, unless with the mutual consent of himself and the company. However, by agreement with the company, on the 10th of November, 1877, the policy was

returned, and from that date ceased to be operative; and the defendant ceased to be a member of the company and was not subject to any liability for losses occurring after that date; but for losses incurred between the date of his policy and the date of the surrender of his policy he was liable for his fair proportion, although at the time of the surrender of the policy all the losses incurred may not have been adjusted; but for the losses for which the company became liable during the year, and something more, of the continuance of the policy the defendant was liable—and this without any special agreement other than what is contained in the policy and according to the charter and by-laws of the company. If during that period of time the plaintiff has shown that certain losses occurred, and their amount and the proportion which became due by the defendant, he is liable to pay such assessments, unless he can show some lawful ground of defense.

The books of the company have been in evidence, and the secretary has testified to their accuracy as showing the losses and assessments upon which the claim of the plaintiff is founded; and there appears to be no evidence contradictory to the losses which were testified to and the assessments which were made. If these assessments were made according to law, the defendant is liable—so far as they were made proportionately upon the losses sustained. It is said on the part of the defendant that these assessments were prematurely made. In the first place let us see whether they were made upon a correct basis.

The testimony is, and it is not contradicted, that they were made upon what are termed the cash premiums of the insured, which were, however, not always paid in cash, but were so assessed and denominated, and were arrived at by a calculation of the rate at which the risk was taken and the amount insured; for the risks were not always the same. The rates were larger according to the supposed risk involved. Some properties were insured at one rate and some properties were insured at another rate. When the rate was fixed the sum insured was multiplied at that rate, and the resulting percentage was the amount of what was considered the cash premiums, and then in making the estimate of the proportion of loss incurred by each one of the members of the company insured, this result (that is, the amount of the cash premium) was multiplied by twenty to ascertain the amount upon which the assessment should be based, and then di-

vided among the insured, according to the rate at which the insurance was taken. This, I charge you, was a calculation which resulted, if it was faithfully and accurately carried out, in the proper adjustment of the proportions assessable upon each one of the premium notes.

[The basis, therefore, adopted by the company for the calculation of the proportionate assessment, was not unlawful.] [1] How was it applied? It is said on the part of the defendant that a greater amount was assessed than was sufficient to pay the loss incurred; and the evidence is that the nominal assessment was really larger than the actual losses sustained, but that that resulted from an allowance made for those members of the company who were insolvent, or who would refuse to pay their assessments, and the company being obliged to incur expenses in making collection. I charge you that within a reasonable extent these allowances were lawful, and that in order for a company of this description to operate and manage its business it is prudent and necessary to make such allowances. You have heard what the allowances were, and the testimony of the secretary was that the sums raised by the assessment were not more than sufficient to pay the risks incurred and the expenses to which the company were put. We have no account of any surplus remaining in the treasury of the company, resulting from these assessments.

But the defendant further says that this note, the premium note of the defendant, was not assessable until certain other assessments had been made, and that the by-laws which were in force at the time the defendant became a member of the company were those by which the company was bound in making its assessments, and that the third clause of § 31 of the by-laws provides that notes subject to the payment of annual interest, and deposit notes upon which the interest has been paid in advance, shall not be assessed until all other notes held by the company liable to assessment shall have first paid in assessments an amount equal to the interest paid and to be paid within six months next succeeding the date of such assessment. Any deficiency then existing may be equitably assessed on all the notes held by the company.

[I construe this by-law to mean, not that all insured in the company are not assessable in the first instance, but that the assessments shall not be collected upon the interest-bearing notes

until the other assessments collectible have been paid in equal to the interest mentioned; and not that an assessment should be made exclusively in the first instance upon those who have not given interest-bearing notes.]  [2]

If, however, the note given by the defendant is not a note bearing interest, this question becomes immaterial.   In examining the note it will be seen that the note itself does not call for interest, but the policy which accompanies it describes it as an interest-bearing note.   How this discrepancy occurred it is difficult to conjecture, for one would suppose that where an annual interest-bearing note was intended to be given it would be drawn in that form.   Still, it may be possible otherwise to explain the note than by a reference to the note itself; for it might be agreed between the parties, otherwise than by the note itslf, that it should bear annual interest, and I am inclined to think that this should be regarded as an interest-bearing note.   [But no interest upon it was ever paid as interest.]   [3]

The money paid by the defendant was the money payable upon his becoming a member of the company.   Upon an insurance being effected at the rate of 1 per cent on $2,500, which was the amount of his insurance, $25, according to the rules of the company, became payable as a cash premium.   Upon that, however, he only paid $15.   That is not to be considered interest.   Therefore no interest was ever paid upon this note as such; and if no interest was paid upon the note during the operation of the policy, the defendant was assessable in any event, whether the note be considered an annual interest-bearing note or not.   If he had paid any interest upon it, he would have been entitled to the amount as a set-off against the assessment made [but inasmuch as no interest was paid, he is not entitled to any such set-off, but he is liable to have assessed upon his premium note all the assessments for losses which took place during the operation of his policy.]   [4]

The policy was given up on the 10th of November, 1877; and therefore no losses which occurred after that date are to be assessed against him, nor any losses which occurred before the 25th of October, 1876, when his policy began to run.   Now it is only as between these dates that the plaintiff claims that he is liable to assessments.   One assessment, it was discovered in the course of the trial, was incorrectly made against him.   That has been withdrawn by the plaintiff, because it seems that that loss oc-

curred outside of the limits of the time I have mentioned. Therefore, if there was no release of the defendant by the company of these liabilities, and he not having paid them, the amount can be recovered in this action. But it is said that he was released, and that may have been his understanding. If so, it was the result of the negotiations which took place between the secretary, representing the company, and himself in the latter part of 1877. Before noticing that part of the case, however, it may be well at this time to notice another defense set up by the defendant: that the company released and settled with certain of the insured, and in that way diminished the number of persons liable, and so put an unlawful burden disproportionately upon the defendant. I charge you, that in all proper cases a company of this kind has a right to make settlements with insolvent members; and it is only in cases where there is favoritism practised, resulting in unfairness towards the others, or fraud of some description, that its conduct in this regard becomes a defense.

There is no evidence, that I remember, in this case of an unlawful settlement having been made by the company with any of its members; and if the company could not release others, it could not have released the defendant, as he claims it did, and that negotiation by which his policy was surrendered and he was freed from further liability would itself have been unlawful.

The defendant did not claim he was released from his liability for any of the assessments for any losses which occurred between the dates I have named, namely, the date of his policy and the date of the surrender of his policy; but what he claims, and that I have already noticed, is that the assessments were not made according to law.

We now come to consider what perhaps you will remember with sufficient distinctness—the negotiation which took place in relation to the surrender of this policy.

You will recollect the letter written by the secretary of the company stating the terms on which the defendant would be released from further liability. He says: "I submitted your proposition to cancel your policy and return your note to the board to-day, and was instructed to say that on the receipt of the assessment and the policy they will relieve you from the payment of any assessment for future losses, but will hold the note until a few undetermined losses are decided; and if the present assessment will be sufficient to pay all the losses incurred to the

date of payment of the present assessment, then the note will be returned without any further assessments, regardless of the interest that has accrued on the same; but they will not consider you released from the payment of any losses that may be sustained while the assessment remains unpaid."

This was the result, according to the testimony, of the determination of the board of the insurance company; and agreeably to these instructions, as the secretary states in his letter, he wrote this proposition to the defendant. The defendant, however, says that he afterwards paid $30, with the understanding that he should be released from further assessments. With whom did he make such an arrangement? There is no evidence of his having made it with the secretary, or with any authorized officer of the company; and is there any evidence that this proposition was ever withdrawn, or that the company receded from its terms? The policy was returned; the note was held by the company afterwards; and this is consistent with the proposition as contained in this letter.

If you can find any evidence in the case by which you can determine that the defendant was relieved from further assessments, you have the right to do so; but I understand from the counsel for the defendant that there is no such claim made, but that the defendant is liable for the assessments lawfully made during the period between the date of the policy and the surrender of it which remain unpaid; that is that he was liable for the losses, and if the assessments were lawfully made he is liable for their payment.

Verdict and judgment for plaintiff. Defendant took this writ, specifying for error: (1–4) The portions of the charge in brackets (5–7) the answer to the points; and (8) the ruling on the evidence as noted.

*L. M. Childs* and *H. K. Weand* for plaintiff in error.

*E. L. Hallman, G. W. Vanfossen,* and *Chas. Hunsicker* for defendant in error.

PER CURIAM:

The ruling and charge of the court below are in all particulars unexceptionable; and, therefore, none of the assignments of error can be sustained. Moreover, as it is not in our power more

clearly and logically to dispose of the various questions which arose during the trial in the court below than has been done by the learned judge, we will not attempt so to do, but affirm the judgment for the reasons which he has given in his charge.

Judgment affirmed.